FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORA P., | No. 4:21-CV-05010-JAG |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 17, 18. Attorney Chad Hatfield represents Nora P. (Plaintiff); Special Assistant United States Attorney Ryan Lu represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

## I.    JURISDICTION

Plaintiff protectively filed an application for Supplemental Security Income on May 15, 2018 alleging disability since November 1, 2017, due to impairments including hypertension, thyroid disease, multiple sclerosis (MS), dizziness, lightheadedness, fatigue, joint pain, insomnia, and headaches. Tr. 63, 72, 219. The applications were denied initially and upon reconsideration. Tr. 89-97, 101-07. Administrative Law Judge (ALJ) Mark Kim held a hearing on June 18, 2020, Tr. 37-61, and issued an unfavorable decision on September 4, 2020. Tr. 15-36. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on November 23, 2020. Tr. 1-8. The ALJ's September 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on January 26, 2021. ECF No. 1.

## II.    STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and are only briefly summarized here. Plaintiff was born in 1976 and was 42 years old on the date the application was filed. Tr. 31. She has a third-grade education and does not speak English; she testified that she can read some English and that she recently started school. Tr. 31, 47, 70. She previously worked as an agriculture/farm worker. Tr. 31.

## III.    STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV.    SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## V.    ADMINISTRATIVE FINDINGS

On September 4, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 15-36.

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 15, 2018, the application date. Tr. 23.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: multiple sclerosis, hypertension, hypothyroidism, headaches, depressive disorder, and anxiety disorder. *Id*.

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24-27.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, but with the following nonexertional limitations:

> [S]he could occasionally climb flights of stairs, ladders, and scaffolds; she should avoid unprotected heights; and she would be limited to work involving simple, routine, and unskilled tasks that did not require fluency in English.

Tr. 27.

At **step four**, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 31.

At **step five**, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of housekeeper, photocopy machine operator, and café attendant. Tr. 32.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. *Id*.

## VI.    ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ conducted a proper step-three analysis; (3) whether the ALJ properly evaluated Plaintiff's subjective complaints; and (4) whether the ALJ conducted a proper step-five analysis.

## VII.    DISCUSSION

A.    **Medical Opinion Evidence.**

Plaintiff alleges the ALJ erred by improperly disregarding the opinion of Samantha Hawkins, ARNP, and Patick Metoyer, PhD. ECF No. 17 at 9-15.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings. *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other

factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The ALJ may explain how he or she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).[2]

---

[2] The Ninth Circuit recently addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id*. Even under the new regulations, an ALJ

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1. *Ms. Hawkins.*

On June 16, 2020 Ms. Hawkins completed a medical report on Plaintiff's behalf. Tr. 538-40. She indicated she had seen Plaintiff one time, in May 2020. Tr. 538. She reported Plaintiff's diagnoses were hypertension, multiple sclerosis, and hyperthyroidism. *Id.* She noted Plaintiff's symptoms included severe pain and numbness in both her feet and legs after standing for long periods of time and swelling and pain in her joints. *Id.* She noted relevant test results included a brain MRI in March 2015, which showed white matter disease that was consistent with multiple sclerosis. *Id.* She indicated Plaintiff has to lie down and elevate her legs during the day because "she states that this is what helps alleviate her pain and swelling in her legs throughout the day." *Id.* She indicated treatment has included the care of a cardiologist and that Plaintiff was "working on getting established with a local neurologist for multiple sclerosis management." She indicated Plaintiff's medications do not have side effects or limit her activities. *Id.* She indicated MS was reasonably likely to cause pain; and, as for a prognosis, she noted she "need[s] more updated information and more future visits with patient to determine." *Id.*

Ms. Hawkins further opined work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, noting that "[i]t could cause her more fatigue which would exacerbate her symptoms. She may have remission periods but eventually will have continuous progression of the disease to disability." *Id.* She indicated Plaintiff would likely miss four days or more of work a month due to impairments, noting "she actually stopped working altogether due to the current severity of her impairments." Tr. 539. She opined Plaintiff is limited to sedentary

must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.* at 792.

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

1
2
3

work, that based on the cumulative effect of her impairments she would likely be off task and unproductive over 30 percent of a 40-hour workweek, and that these limitations have existed since at least March 2015. Tr. 539-40.

4
5
6
7
8
9
10
11

The ALJ found Ms. Hawkins' opinion unpersuasive because it was speculative, relied on incorrect information, and because Ms. Hawkins had treated Plaintiff for less than a month when she completed the statement. Tr. 29. Plaintiff contends the ALJ erred by taking issue with her MS diagnoses, by failing to identify how Ms. Hawkins' opinion is speculative or based on incorrect information, and because her opinion is consistent with the longitudinal record. ECF No. 17 at 10-13. Defendant contends the ALJ reasonably evaluated the medical opinion under the new regulations. ECF No. 18 at 13.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court finds the ALJ did not err. The length of time a medical source has treated Plaintiff is a factor the ALJ considers in assessing the persuasiveness of an opinion, 20 C.F.R. § 416.920c(c)(3), and the ALJ reasonably found Ms. Hawkings opinion unpersuasive because she indicated she had only seen Plaintiff on one occasion at the time of her opinion. Tr. 538. The ALJ also reasonably found Ms. Hawkins' opinion speculative, as Ms. Hawkins herself indicated her opinion was based on Plaintiff's reports of what helped relieve her symptoms, and she also indicated that she needed more information and visits before she could determine Plaintiff's prognosis. Tr. 29; *see* Tr. 538. The ALJ also reasonably found portions of Ms. Hawkins' opinion equivocal. Tr. 29. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Ms. Hawkins opined, for example, that regular work "could" cause Plaintiff more fatigue, and that her condition "eventually" would progress, and that MS was "reasonably likely" to cause her pain. *See* Tr. 538. These are not concrete limitations, and the ALJ was within his discretion to reject speculative and equivocal statements from the provider.

The ALJ also concluded Ms. Hawkins opinion relied on incorrect information, pointing out that other providers did not think her MRIs reflected findings consistent with MS. Tr. 29. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). While records show diagnosis of MS, records from a neurology consult in 2017 show the white matter changes "were not convincing for MS" with the specialist noting while there was stable white matter disease, it was similar to that seen in others with hypertension and hypercholesteremia, and "there is no significant interval change over time to suggest MS and she does not have a clinical history for MS as well." Tr. 322. Records from 2018 show a diagnosis of MS, but also that she was "not currently needing treatment for it"; and records from 2019 show she "was told [she] could have MS based on MRI" but her provider noted she was not on neuromuscular medication and neurology was "just watching for time being." Tr. 438. The ALJ reasonably found Ms. Hawkins opinion unpersuasive because it was speculative and she offered little support for her opinion beyond Plaintiff's reports, she had minimal history with Plaintiff, and her opinion was inconsistent with the record as a whole, which showed more mixed findings concerning an MS diagnosis. The ALJ's findings are supported by substantial evidence.

## 2. *Dr. Metoyer.*

In December 2018, Plaintiff attended a mental consultative examination with Dr. Metoyer, who administered a clinical interview and mental status exam and provided an assessment of Plaintiff's functioning. Tr. 453-57. Dr. Metoyer diagnosed her with generalized anxiety disorder; major depressive disorder, recurrent, moderate; and he noted a rule out diagnosis of neurocognitive disorder. Tr. 456. He opined she appeared to have the ability to reason and understand, had some adaption skills, and her memory was intact. Tr. 457. He opined her

"[s]ustained concentration and persistence are mildly impaired based on the brief concentration tasks of this evaluation," noting she "describe[s] difficulty following through with tasks in her home environment . . . and significant interpersonal challenged in her personal life and prior work environment as a result of anxiety, mood symptoms, cognitive symptoms." *Id.* He opined her ability to interact with coworkers and the public was likely moderately impaired; her ability to maintain attendance in the workplace was moderately impaired; her ability to complete a normal workweek without interruption from anxiety, mood symptoms, and cognitive symptoms was likely moderately impaired; and her ability to deal with the usual stress encountered in the workplace if markedly impaired if it involved persistent activity, complex tasks, task pressure, and interacting with other individuals. *Id.*

The ALJ found Dr. Metoyer's opinion generally unpersuasive because it was based almost solely on Plaintiff's self-reports and her reports to Dr. Metoyer were "more extensive than what she reported when attempting to obtain treatment for her conditions." Tr. 30. Plaintiff contends the ALJ erred because the ALJ agreed with and adopted Dr. Metoyer's opinion elsewhere in the decision, the ALJ did not explain how the opinion was based on Plaintiff's self-reports, and because objective findings on mental status exam support Dr. Metoyer's opinion; and that the ALJ erred by rejecting the opinion based on waxing and waning symptoms. ECF No. 17 at 13-15. Defendant contends the ALJ evaluated the medical opinion under the new regulations, reasonably finding Dr. Metoyer's opinion unsupported by his own exam and inconsistent with other evidence in the record. ECF No. 18 at 14-16.

The Court finds the ALJ did not err. The ALJ reasonably found Dr. Metoyer's opinion generally unpersuasive because it was based on Plaintiff's subjective reporting of symptoms, which were inconsistent with her reports in

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

treatment notes for her conditions. Tr. 30. For example, the ALJ noted she reported she was "doing excellent" on medication for depression in January 2020, and in March 2020 she reported stable mood and denied sadness, racing thoughts, anxiety, or nervousness; the ALJ also noted she had not sought counseling and her mental health treatment was limited to medication. Tr. 30 (citing Tr. 459, 509). Records from August 2018 also show stable depression, and she denied sadness or hopelessness, suicidal ideation, or racing thoughts. Tr. 415.

While Plaintiff contends the ALJ erred by not explaining how Dr. Metoyer's opinion was based on Plaintiff's self-reports, and because his mental status findings support his opinion, review of the record shows Dr. Metoyer's mental status findings are generally within normal limits. *See* Tr. 455-46. While Dr. Metoyer noted Plaintiff's description of "anxious, depressed" mood, and he observed congruent affect, Dr. Metoyer also observed she was well groomed, there was no evidence of psychomotor agitation or retardation, and she was cooperative and engaged throughout the exam. Tr. 455. She denied suicidal and homicidal ideation and hallucinations, and he observed her speech was nonpressured and her thought process was goal directed; she was oriented and her remote and recent memory was intact. *Id.* While she had a few errors with immediate memory, fund of knowledge was lacking, and she was unable to spell "world," she was able to perform serial sevens and able to follow a three-step command and follow the conversation. Tr. 455-56.  Dr. Metoyer also indicated that some of his assessed limitations were based on Plaintiff's self-reports, noting "she does describe difficulty following through with tasks in her home environment," she "reports she is self-isolating," and that she "indicates issues with health, chronic pain, anxiety, mood problems, cognitive symptoms in [a] prior work environment." Tr. 456. The ALJ reasonably found Dr. Metoyer's opinion appeared based on Plaintiff's self-

reports instead of mental status findings, and that it was inconsistent with the longitudinal record.

Plaintiff argues the ALJ's decision is also internally inconsistent because he agreed with and adopted Dr. Metoyer's opinion earlier in the decision. ECF No. 17 at 13-14. While the ALJ agreed with some of Dr. Metoyer's findings at step three of the decision, the ALJ also rejected some of Dr. Metoyer's findings in favor of the state agency examiner at step three. *See* Tr. 25-26. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041. There is no indication the ALJ adopted Dr. Metoyer's opinion as a whole earlier in the decision and there is no indication the ALJ adopted any disabling limitations. Even if the evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ's findings are supported by substantial evidence.

The Court finds the ALJ's discussion of the medical opinion evidence is supported by substantial evidence.

**B.    Step Three.**

Plaintiff contends the ALJ erred at step three by failing to conduct an adequate analysis and failing to find the Plaintiff disabled. ECF No. 17 at 15-18. At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. *Tackett*, 180 F.3d at 1099. If a claimant's condition meets or equals a Listing, the claimant is considered disabled without further inquiry. 20 C.F.R. § 416.920(d). "Listed impairments are purposefully set at a high level of severity because 'the listings

were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. Further, "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2p, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal any listings, noting that he considered the cardiovascular listings and the endocrine listings, and that no medical source had opined

Plaintiff's impairments met or equaled a listing. Tr. 24. The ALJ further noted he had considered "SSR 19-4p [which] provides guidance on how to evaluate primary headache disorders" and that based on the longitudinal record found the "headaches she has experienced are not of the severity contemplated by the listings." Tr. 25.  In regard to multiple sclerosis, the ALJ indicated he considered listing 11.09, finding she did not have marked or extreme limitations as required by the listing; he noted that while her symptoms "cause more than a minimal effect on her capacity for work activity as will be explained further below . . . she still has the capacity for light exertion with a few postural and environmental limitations." *Id.* The ALJ also considered Plaintiff's mental health impairments under listings 12.04 and 12.06. *Id.*

Plaintiff argues the ALJ failed to conduct an adequate analysis including whether or not Plaintiff's impairments meet or equal a listing, failed to make actual findings regarding whether she suffers a marked limitation in physical functioning in terms of MS, failed to consider her mental and physical impairments in combination, failed to discuss evidence at step three, and failed to find the Plaintiff disabled at step three. ECF No 17 at 15-18. Defendant contends the ALJ reasonably found Plaintiff's impairments were not severe enough to satisfy the listing criteria at step three, and that Plaintiff did not meet her burden to prove her impairments met or medically equaled the criteria of listing. ECF No. 18 at 16-18.

The Court finds the ALJ did not err. First, there is no requirement that the ALJ's discussion of evidence must occur at the step three determination. *Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001) (finding that the ALJ "discussed and evaluated the evidence" that claimant did not meet a listing, even though that discussion did not take place "under the heading 'Findings'"). Further, the step three findings by the ALJ must also be read in conjunction with the entire ALJ decision. SSR 17-2p, 2017 WL 3928306, at *4. Here, under the step three finding

the ALJ explained Plaintiff did not meet or equal the severity of any listed impairment, and also briefly explained findings related to the relevant listings. Tr. 24-26. Factual findings later in the ALJ's decision describe evidence with sufficient specificity, adequately supporting the ALJ's step three determination throughout the decision.

Additionally, courts will not find an ALJ has erred in determining whether combined impairments equal a listed impairment unless the Plaintiff has offered a "plausible theory" of medical equivalency. *See Kennedy*, 738 F.3d at 1176-77 (citing *Lewis*, 236 F.3d at 514).  Here, Plaintiff has failed to articulate how any of her impairments (or combination of impairments) meets or equals the criteria of any listed impairment and has not met the burden of demonstrating she meets or equals any listing. The ALJ's analysis in its entirety is sufficient for the Court to meaningfully review the ALJ's finding that Plaintiff's impairments did not meet or equal the criteria of any listing.

Plaintiff is not entitled to remand on this basis.

## C.    **Subjective Complaints.**

Plaintiff contends the ALJ improperly rejected her subjective complaints. ECF No. 17 at 18-20. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

"General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 28. The ALJ found Plaintiff's allegations were inconsistent with the objective evidence; records showed limited treatment and failure to comply with treatment recommendations, and that she improved with treatment; and her allegations were inconsistent with her activities of daily living. Tr. 26, 28-29.

Plaintiff argues the ALJ improperly rejected Plaintiff's subjective complaints. ECF No. 17 at 18-20. Defendant argues the ALJ reasonably interpreted the record. ECF No. 18 at 4-8.

### 1. *Inconsistent Objective Medical Evidence.*

The ALJ found the objective medical evidence does not fully support the level of limitations claimed. Tr. 28-29. Although it cannot serve as the sole ground for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ acknowledged Plaintiff had uncontrolled hypertension and white matter changes reflected on an MRI but also noted that a specialist indicated the MRI imaging was consistent with individuals who have hypertension and hypercholesterolemia and did not necessarily indicate MS. Tr. 28 (citing Tr. 322). The ALJ noted a cervical MRI in 2017 showed minimal degenerative changes. Tr. 28 (citing Tr. 326). The ALJ also noted there are minimal medical records between June and December

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

2018, and that Plaintiff worked during that time despite her symptoms. Tr. 28. The ALJ also noted Plaintiff's thyroid problems require no treatment at this time aside from a yearly ultrasound, and that while records show her hypertension was frequently poorly controlled, records also show she did not always take her medications as prescribed. Tr. 28-29, *see, e.g.*, Tr. 470-71, 507. While records show some headaches, the ALJ noted records also show inconsistent report of headache frequency; there were no headaches reported at visits in 2018, 2019, and 2020, diagnosis of a tension headache in 2019, and she has reported treatment including Excedrin relieved her symptoms. Tr. 25 (citing Tr. 416, 418, 460, 463, 471, 474-75).

While Plaintiff contends the ALJ did not account for side effects of medications, and records from April 2019 show she had to stop some medications due to side effects including leg swelling, *see* Tr. 480, records from January and March 2020 show she denied side effects from medications. Tr. 462, 459. In June 2020, Ms. Hawkins also reported Plaintiff's medications did not have side effects or limit her activities. Tr. 538. As discussed *supra*, although Plaintiff had depressed and anxious mood, a mental status exam in 2018 was generally normal; she was, for example, able to perform serial sevens and able to follow a three-step command and follow the conversation. Tr. 455-56.

The ALJ's interpretation of the record is reasonable. While Plaintiff identifies some objective findings that are supportive of her allegations, when the evidence can reasonably support either affirming or reversing a decision, the Court may not substitute its judgment for that of the Commissioner. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Lack of support in the medical record, coupled with the additional reasons offered by the ALJ as discussed below, is a clear and convincing reason to give less weight to Plaintiff's subjective complaints.

### 2.    _Limited Treatment/Improvement with Treatment/Compliance with Treatment Recommendations._

The ALJ noted Plaintiff's possible MS and thyroid conditions did not require treatment during the period at issue, that she did not always follow through with treatment recommendations for her other conditions, and that she improved with treatment. Tr. 29. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Additionally, an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, as discussed *supra*, the ALJ noted some of her impairments required no treatment during the period at issue. While records show her hypertension was often uncontrolled, the ALJ noted Plaintiff's reports she had stopped taking her blood pressure medication in 2019; and her cardiologist also told her she was taking her medication incorrectly in December 2019. Tr. 28-29 (citing Tr. 469-70, 492). Records from 2019 show Plaintiff's primary care provider reported hypertension for many years with a history of noncompliance with treatment. Tr. 470. Her provider assessed her with "noncompliance with medication regimen" at that time and noted "at every visit our conversation is similar . . . she does not take meds [sic] as prescribed." *Id.* The ALJ also noted she has not sought any counseling and relies on prescribed medications to control mental health symptoms. Tr. 30.

On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with her lack of need for treatment for some conditions,

evidence of improvement with treatment, and failure to follow some treatment recommendations. These findings are supported by substantial evidence and are clear and convincing reasons to discount Plaintiff's symptom claims.

### 3.   *Activities of Daily Living.*

The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989); *Molina v. Astrue*, 674 F.3d 1104, 1112-13. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted Plaintiff's report she went outside daily and could walk and drive places, and that she did not report difficulty getting along with others. Tr. 26 (citing Tr. 280, 282). The ALJ noted Plaintiff testified she had started attending school and elsewhere she reported she was studying for the U.S. citizenship test. Tr. 26 (citing Tr. 47, 278). The ALJ noted that at the 2018 consultative exam she reported she had no significant difficulty with personal care and hygiene, although she had some difficulty with activities around the house such as cleaning, shopping, and laundry; the ALJ noted she reported elsewhere that she could do most chores. Tr. 30 (citing Tr. 279, 456). The ALJ reasonably concluded that Plaintiff's activities of daily living were inconsistent with her symptom claims. This finding, coupled with the additional reasons offered by the

ALJ as discussed above, is a clear and convincing reason to give less weight to Plaintiff's subjective complaints.

Plaintiff is not entitled to remand on these grounds.

**D.    Step Five.**

Plaintiff contends the ALJ erred in failing to include all limitations in the hypothetical posed to the vocational expert. ECF No. 17 at 20. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The hypothetical that ultimately serves as the basis for the ALJ's determination, *i.e.*, the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211,1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

*Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A Plaintiff fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff contends the ALJ erred by relying on the vocational expert's response to an incomplete hypothetical. ECF No. 17 at 20. However, Plaintiff's argument assumes that the ALJ erred in his analysis of the medical opinion evidence. As addressed *supra*, the ALJ properly assessed the medical opinion evidence. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the medical opinions in this record.

Plaintiff is not entitled to remand on these grounds.

## VII.   CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed. Therefore, **IT IS HEREBY ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

ORDER GRANTING DEFENDANT'S MOTION . . . - 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 30, 2022.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 22